No. 98–5410. ELLEDGE *v.* FLORIDA. Sup. Ct. Fla. Certiorari denied.

JUSTICE BREYER, dissenting.

Petitioner in this case has spent more than 23 years in prison under sentence of death. His claim—that the Constitution forbids his execution after a delay of this length—is a serious one.

The Eighth Amendment forbids punishments that are "cruel" and "unusual." Twenty-three years under sentence of death is unusual—whether one takes as a measuring rod current practice or the practice in this country and in England at the time our Constitution was written. See, *e. g.,* P. Mackay, Hanging in the

_____

ing prohibition shall be null and void and of no force or effect.'" 128 F. 3d 289, 291 (CA6 1997).

Balance: The Anti-Capital Punishment Movement in New York State, 1776–1861, p. 17 (1982) (executions took place soon after sentencing in 18th-century New York); *Pratt* v. *Attorney Gen. of Jamaica,* [1994] 2 App. Cas. 1, 17 (P. C. 1993) (same in United Kingdom); see also T. Jefferson, A Bill for Proportioning Crimes and Punishments (1779), reprinted in The Complete Jefferson 90, 95 (S. Padover ed. 1943); 2 Papers of John Marshall 207–209 (C. Cullen & H. Johnson eds. 1977) (petition seeking commutation of a death sentence in part because of lengthy 5-month delay).

Moreover, petitioner argues forcefully that his execution would be especially "cruel." Not only has he, in prison, faced the threat of death for nearly a generation, but he has experienced that delay because of the State's own faulty procedures and not because of frivolous appeals on his own part. His three successful appeals account for 18 of the 23 years of delay. A fourth appeal accounts for the remaining five years—which appeal, though ultimately unsuccessful, left the Florida Supreme Court divided 4–2. 706 So. 2d 1340 (1997); see Brief in Opposition 12 (conceding that "[a]ll delays were a result of [petitioner's] 'successful litigation' in the appellate courts of Florida and the federal system").

As JUSTICE STEVENS has previously pointed out, executions carried out after delays of this magnitude may prove particularly cruel. *Lackey* v. *Texas,* 514 U. S. 1045 (1995) (opinion respecting denial of certiorari). After such a delay, an execution may well cease to serve the legitimate penological purposes that otherwise provide a necessary constitutional justification for the death penalty. *Ibid.* Moreover, British jurists have suggested that the Bill of Rights of 1689, a document relevant to the interpretation of our own Constitution, may forbid, as cruel and unusual, significantly lesser delays. *Riley* v. *Attorney Gen. of Jamaica,* [1983] 1 App. Cas. 719, 734–735 (P. C. 1982) (Lord Scarman, joined by Lord Brightman, dissenting). See generally *Harmelin* v. *Michigan,* 501 U. S. 957, 966–967 (1991) (SCALIA, J., concurring in judgment) (on the relevance of the 1689 Bill of Rights to the interpretation of our own Constitution).

Finally, a reasoned answer to the "delay" question could help to ease the practical anomaly created when foreign courts refuse to extradite capital defendants to America for fear of undue delay in execution. See *Soering* v. *United Kingdom,* 11 Eur. H. R. Rep. 439 (1989) (holding that the extradition of a capital defendant to

America would be a violation of Article 3 of the European Convention on Human Rights, primarily because of the risk of delay before execution).

For these reasons, and for the additional reasons set forth by JUSTICE STEVENS in *Lackey, supra,* I would grant the petition for certiorari.