No. 01–10868. FOSTER *v.* FLORIDA ET AL. Sup. Ct. Fla. Certiorari denied.

Statement of JUSTICE STEVENS respecting the denial of the petition for writ of certiorari.

In response to JUSTICE THOMAS' concurring opinion, I think it appropriate once again to emphasize that the denial of a petition for a writ of certiorari does not constitute a ruling on the merits. See *Knight* v. *Florida*, 528 U. S. 990 (1999) (opinion of STEVENS, J., respecting denial of petitions for writ of certiorari); *Singleton* v. *Commissioner*, 439 U. S. 940, 942–946 (1978) (opinion of STEVENS, J., respecting denial of petition for writ of certiorari).

JUSTICE THOMAS, concurring.

In the three years since we last debated this meritless claim in *Knight* v. *Florida*, 528 U. S. 990 (1999) (THOMAS, J., concurring), nothing has changed in our constitutional jurisprudence.* I

---

*JUSTICE BREYER notes that the Supreme Court of Canada has expressed concern over delays in the administration of the death penalty in the United States. *Post*, at 992–993 (dissenting opinion). I daresay that court would be even more alarmed were there, as Blackstone commended, only a 48-hour delay between sentence and execution. *Knight*, 528 U. S., at 990–991, n. 1 (THOMAS, J., concurring) (citing 4 W. Blackstone, Commentaries *397). In any event, JUSTICE BREYER has only added another foreign court to his list while still failing to ground support for his theory in any decision by an American court. 528 U. S., at 990. While Congress, as a *legislature*, may wish to consider the actions of other nations on any issue it likes, this Court's Eighth Amendment jurisprudence should not impose foreign moods, fads, or fashions on Americans. Cf. *Atkins* v. *Virginia*, 536 U. S. 304, 324–325 (2002) (REHNQUIST, C. J., dissenting).

therefore have little to add to my previous assessment of JUSTICE BREYER's musings. See *id.*, at 992 ("Consistency would seem to demand that those who accept our death penalty jurisprudence as a given also accept the lengthy delay between sentencing and execution as a necessary consequence").

This Court's vacatur of a death sentence because of constitutional error does not bar new sentencing proceedings resulting in a reimposition of the death penalty. Petitioner seeks what we would not grant to a death-row inmate who had suffered the most egregious of constitutional errors in his sentencing proceedings—a permanent bar to execution. Murderers such as petitioner who are not apprehended and tried suffer from the fear and anxiety that they will one day be caught and punished for their crimes—perhaps even sentenced to death. Will JUSTICE BREYER next have us consider the constitutionality of capital murder trials that occur long after the commission of the crime simply because the criminal defendants, who have evaded capture, have been so long suffering?

Petitioner could long ago have ended his "anxieties and uncertainties," *post*, at 993, by submitting to what the people of Florida have deemed him to deserve: execution. Moreover, this judgment would not have been made had petitioner not slit Julian Lanier's throat, dragged him into bushes, and then, when petitioner realized that he could hear Lanier breathing, cut his spine. 369 So. 2d 928, 929 (Fla. 1979).

JUSTICE BREYER, dissenting.

Petitioner Charles Foster has spent more than 27 years in prison since his initial sentence of death. He was sentenced to death on October 4, 1975. In 1981, five days before his scheduled execution, a Federal District Court issued a stay to permit consideration of his first federal habeas petition. This petition was temporarily successful. The Court of Appeals held that Foster's sentence was constitutionally defective because the trial court had failed to state required findings regarding mitigating factors. But four months later the court withdrew relief, saying that it had wrongly raised the question *sua sponte*. *Foster* v. *Strickland*, 707 F. 2d 1339, 1352 (CA11 1983).

In 1984, a second death warrant issued. The courts again stayed the execution. From 1987 to 1992, the Florida courts twice vacated Foster's sentence because the trial court had failed

properly to consider certain mitigating factors. New sentencing proceedings followed. Each time Foster was again sentenced to death. Foster's latest resentencing took place in 1993, 18 years after his initial sentence and 10 years after the Court of Appeals first found error.

Foster now asks this Court to consider his claim that his execution, following these lengthy proceedings, would violate the Constitution's prohibition of "cruel and unusual punishments." JUSTICE STEVENS and I have previously argued that the Court should hear this kind of claim. See *Lackey* v. *Texas*, 514 U. S. 1045 (STEVENS, J., respecting denial of certiorari); *Elledge* v. *Florida*, 525 U. S. 944 (1998) (BREYER, J., dissenting from denial of certiorari); *Knight* v. *Florida*, 528 U. S. 990, 993–999 (1999) (BREYER, J., dissenting from denial of certiorari). And I believe the present case presents circumstances particularly fitting for this Court's review.

For one thing, 27 years awaiting execution is unusual by any standard, even that of current practice in the United States, where the average executed prisoner spends between 11 and 12 years under sentence of death, U. S. Dept. of Justice, Bureau of Justice Statistics Bulletin, T. Snell, Capital Punishment 2000, p. 12 (Dec. 2001). A little over two years ago, there were only eight prisoners in the United States who had been under sentence of death for 24 years or more, and none who had been on death row for 27 years. *Id.*, at 13. Now we know there is at least one.

For another thing, as JUSTICE STEVENS and I have previously pointed out, the combination of uncertainty of execution and long delay is arguably "cruel." This Court has recognized that such a combination can inflict "horrible feelings" and "an immense mental anxiety amounting to a great increase of the offender's punishment." *In re Medley*, 134 U. S. 160, 172 (1890); see also *Furman* v. *Georgia*, 408 U. S. 238, 288–289 (1972) *(per curiam)* (Brennan, J., concurring) ("[T]he prospect of pending execution exacts a frightful toll"). Courts of other nations have found that delays of 15 years or less can render capital punishment degrading, shocking, or cruel. *E. g., Pratt* v. *Attorney General for Jamaica*, [1994] 2 A. C. 1, 29, 33, 4 All E. R. 769, 783, 786 (P. C. 1993) (en banc) (U. K. Privy Council); *Soering* v. *United Kingdom*, 11 Eur. Ct. H. R. (ser. A), pp. 439, 478, ¶ 111 (1989) (European Court of Human Rights). See *Knight, supra*, at 995–996. Consistent with these determinations, the Supreme Court of Canada recently

held that the potential for lengthy incarceration before execution is "a relevant consideration" when determining whether extradition to the United States violates principles of "fundamental justice." *United States* v. *Burns,* [2001] 1 S. C. R. 283, 353, ¶ 123. Just as "attention to the judgment of other nations" can help Congress determine "the justice and propriety of [America's] measures," The Federalist No. 63, p. 382 (C. Rossiter ed. 1961) (J. Madison), so it can help guide this Court when it decides whether a particular punishment violates the Eighth Amendment. Cf. *Atkins* v. *Virginia,* 536 U. S. 304, 316–317, n. 21 (2002).

Foster has endured an extraordinarily long confinement under sentence of death, a confinement that extends from late youth to later middle age. The length of this confinement has resulted partly from the State's repeated procedural errors. Death row's inevitable anxieties and uncertainties have been sharpened by the issuance of two death warrants and three judicial reprieves. If executed, Foster, now 55, will have been punished both by death and also by more than a generation spent in death row's twilight. It is fairly asked whether such punishment is both unusual and cruel.

I would grant the petition for certiorari in this case.