# SUPREME COURT OF THE UNITED STATES

## WILLIAM LEE THOMPSON *v.* WALTER A. MCNEIL, SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 08–7369.   Decided March 9, 2009

The petition for a writ of certiorari is denied.

Statement of JUSTICE STEVENS respecting the denial of the petition for writ of certiorari.

Last Term, in my opinion in *Baze* v. *Rees*, 553 U. S. \_\_\_ (2008), I suggested that the "time for a dispassionate, impartial comparison of the enormous costs that death penalty litigation imposes on society with the benefits that it produces has surely arrived." *Id.*, at \_\_\_ (slip op., at 12) (opinion concurring in judgment).  This petition for certiorari describes costs that merit consideration in any such study.

In June 1976, having been advised by counsel that he would not receive the death penalty if he accepted responsibility for his crime, petitioner pleaded guilty to a capital offense.  The advice was erroneous, and he was sentenced to death.  Since that time, two state-court judgments have set aside his death sentence.  See *Thompson* v. *State*, 351 So. 2d 701 (Fla. 1977); *Thompson* v. *Dugger*, 515 So. 2d 173 (Fla. 1987).  At a third penalty hearing—after petitioner presented mitigation evidence about his limited mental capacity and dysfunctional childhood that had previously been barred—five members of the advisory jury voted against a death sentence, but the court again imposed a sentence of death.

Thirty-two years have passed since petitioner was first sentenced to death.  In prior cases, both JUSTICE BREYER and I have noted that substantially delayed executions arguably violate the Eighth Amendment's prohibition

against cruel and unusual punishment. See, *e.g.*, *Smith* v. *Arizona*, 552 U. S. ___, ___ (2007) (BREYER, J., dissenting from denial of certiorari); *Foster* v. *Florida*, 537 U. S. 990, 991 (2002) (same); *Knight* v. *Florida*, 528 U. S. 990, 993 (1999) (same); *Lackey* v. *Texas*, 514 U. S. 1045 (1995) (STEVENS, J., respecting denial of certiorari). Petitioner's case involves a longer delay than any of those earlier cases.

As he awaits execution, petitioner has endured especially severe conditions of confinement, spending up to 23 hours per day in isolation in a 6- by 9-foot cell. Two death warrants have been signed against him and stayed only shortly before he was scheduled to be put to death. The dehumanizing effects of such treatment are undeniable. See *People* v. *Anderson*, 6 Cal. 3d 628, 649, 493 P. 2d 880, 894 (1972) ("[T]he process of carrying out a verdict of death is often so degrading and brutalizing to the human spirit as to constitute psychological torture"); *Furman* v. *Georgia*, 408 U. S. 238, 288 (1972) (Brennan, J., concurring) ("[T]he prospect of pending execution exacts a frightful toll during the inevitable long wait between the imposition of sentence and the actual infliction of death"). Moreover, as I explained in *Lackey*, delaying an execution does not further public purposes of retribution and deterrence but only diminishes whatever possible benefit society might receive from petitioner's death. It would therefore be appropriate to conclude that a punishment of death after significant delay is "so totally without penological justification that it results in the gratuitous infliction of suffering." *Gregg* v. *Georgia*, 428 U. S. 153, 183 (1976) (joint opinion of Stewart, Powell, and STEVENS, JJ.).

While the length of petitioner's confinement under sentence of death is extraordinary, the concerns his case raises are not unique. Clarence Allen Lackey had spent 17 years on death row when this Court reviewed his petition for certiorari. Today, condemned inmates await

execution for an average of nearly 13 years. See Dept. of Justice, Bureau of Justice Statistics, Capital Punishment, 2007 (Table 11) (2008), online at http://www.ojp.usdoj.gov/ bjs/pub/html/cp/2007/tables/cp07st11.htm (all Internet materials as visited Feb. 20, 2009, and available in Clerk of Court's case file). To my mind, this figure underscores the fundamental inhumanity and unworkability of the death penalty as it is administered in the United States.

Some respond that delays in carrying out executions are the result of this Court's insistence on excessive process. But delays have multiple causes, including "the States' failure to apply constitutionally sufficient procedures at the time of initial [conviction or] sentencing." *Knight*, 528 U. S., at 998 (BREYER, J., dissenting from denial of certiorari). The reversible error rate in capital trials is staggering. More than 30 percent of death verdicts imposed between 1973 and 2000 have been overturned,[1] and 129 inmates sentenced to death during that time have been exonerated, often more than a decade after they were convicted.[2] Judicial process takes time, but the error rate in capital cases illustrates its necessity. We are duty bound to "insure that every safeguard is observed" when "a defendant's life is at stake." *Gregg*, 428 U. S., at 187 (joint opinion of Stewart, Powell, and STEVENS, JJ.).

In sum, our experience during the past three decades has demonstrated that delays in state-sponsored killings are inescapable and that executing defendants after such

---

[1] Dept. of Justice, Bureau of Justice Statistics Bulletin, Capital Punishment, 2005, p. 14 (Dec. 2006) (App. Table 12), http:/www.ojp.usdoj. gov/bjs/pub/pdf/cp05.pdf. This figure is underinclusive, as it does not account for the fact that many condemned inmates' convictions and sentences are still under review.

[2] See Death Penalty Information Center, Innocence: List of Those Freed from Death Row (Sept. 18, 2008), http://www.deathpenaltyinfo. org/innocence-list-those-freed-death-row (showing that an average of nearly 10 years elapsed between an inmate's conviction and his exoneration).

delays is unacceptably cruel. This inevitable cruelty, coupled with the diminished justification for carrying out an execution after the lapse of so much time, reinforces my opinion that contemporary decisions "to retain the death penalty as a part of our law are the product of habit and inattention rather than an acceptable deliberative process." *Baze*, 553 U. S., at ___, ___ (slip op., at 8, 17) (STEVENS, J., concurring in judgment).