**[J-70-2014]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, STEVENS, JJ.**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : No. 681 CAP |
| | : |
| Appellee | : Appeal from the Judgment of Sentence |
| | : entered on 03/28/2013 in the Court of |
| | : Common Pleas, Criminal Division of |
| v. | : Delaware County at No. |
| | : CP-23-CR-0004586-1994 |
| | : |
| WAYNE A. SMITH, | : ARGUED:  November 18, 2014 |
| | : |
| Appellant | : |

**OPINION**

**MR. JUSTICE EAKIN**                    **DECIDED:  December 21, 2015**

Appellant appeals from the judgment of sentence of death imposed by a jury following the grant of a new penalty-phase hearing.  For the reasons set forth below, we affirm.

On November 18, 1994, Eileen Jones and appellant went to appellant's nephew to borrow a car; the nephew gave him the keys, and appellant and Jones left together in the car.  Appellant returned the car later that evening.

The next afternoon, appellant told his brother he murdered Jones in a nearby park by choking her with his hands and belt.  Jones's body was discovered November 22, 1994; the county medical examiner concluded the death was homicide by strangulation. After a search of appellant's home, police officers recovered several newspapers from which articles regarding the recovery of Jones's body had been removed.

Appellant was given Miranda[1] warnings and waived his rights. He stated he borrowed his nephew's car to purchase drugs, and Jones agreed to have sex with him in exchange for the drugs. Appellant and Jones went to a park, and appellant attempted to have sex with her. Appellant stated he choked Jones to death because he was concerned she would accuse him of rape. He disposed of her body in a nearby creek.

A jury found appellant guilty of first-degree murder and sentenced him to death. Appellant appealed, and this Court affirmed the conviction and the sentence. Commonwealth v. Smith, 694 A.2d 1086, 1096 (Pa. 1997). Appellant then filed a pro se petition under the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 et seq., and counsel was appointed. Following a hearing, the PCRA court denied the petition. We affirmed the denial of guilt-phase relief, but vacated the death sentence and remanded for a new penalty-phase hearing on the grounds that counsel provided ineffective assistance. Commonwealth v. Smith, 995 A.2d 1143, 1173 (Pa. 2010). At that 2012 penalty-phase hearing, a jury sentenced appellant to death after finding the aggravating circumstance of a prior voluntary-manslaughter conviction,[2] 42 Pa.C.S. § 9711(d)(12), outweighed the mitigating circumstances of appellant's emotional distress, id., § 9711(e)(2), and abusive childhood, id., § 9711(e)(8). Appellant timely appealed to this Court, raising the following claims of error:

I.    Whether the trial court erred in denying [a]ppellant's motion to bar the death penalty, after a delay of some 17 years, brought on ineffective assistance of counsel, during which valuable information was lost and defense witnesses died[.]

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

[2] Appellant was convicted of voluntary manslaughter in 1980 for the stabbing death of his then-girlfriend's brother.

II.      Whether the trial court erred in allowing evidence of [a]ppellant's prior homicide conviction[.]

III.    Whether the trial court erred in admitting testimony that [a]ppellant read books on murder and how to commit the perfect crime[.]

IV.    Whether the trial court erred in denying [a]ppellant a mistrial where the Commonwealth expert witness told the jury that [a]ppellant had been found guilty and place[d] on death row[.]

V.     Whether the trial court erred in ordering the jury to resume deliberations after the jury stated it was unable to reach a unanimous verdict[.]

VI.    Whether the trial court erred in not allowing [a]ppellant to ask prospective jurors whether they could consider life imprisonment knowing [a]ppellant had been convicted of a prior homicide[.]

Appellant's Brief, at 4.

## I.  **Motion to Bar the Death Penalty**

Appellant contends the trial court committed legal error and abused its discretion by denying his pre-trial motion to bar the death penalty. He notes 17 years have passed from his May 1995 conviction to final sentencing in June of 2012, which, he argues, violated his rights to due process and a speedy trial. Further, he argues this delay amounts to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and Article I, § 13 of the Pennsylvania Constitution. Appellant states several of his potential witnesses died between the 2002 PCRA proceedings and the 2012 new penalty-phase hearing. Moreover, appellant asserts Detective Lawrence Crews, who investigated the victim's death in appellant's 1980 voluntary-manslaughter case, could not recall certain facts regarding that conviction, depriving him of details which would have been helpful to the defense.

The trial court found appellant's argument was a matter of first impression and looked to other jurisdictions for guidance. Specifically, the trial court looked to State v. Azania, 865 N.E.2d 994 (Ind. 2007), where the Supreme Court of Indiana applied the

balancing test used by the United States Supreme Court in Barker v. Wingo, 407 U.S. 514 (1972), to determine whether the defendant's rights to a speedy trial and due process were violated. In Azania, the defendant was convicted of murder and sentenced to death, but the case was remanded for a new penalty-phase hearing. Azania, at 997. At the new penalty-phase hearing, 13 years after conviction, the jury returned a death sentence, which was affirmed. Id. The death sentence was again vacated, and, at the new penalty-phase hearing, the trial court granted the defendant's motion to bar the death penalty. Id. The state appealed. Id.

The Supreme Court of Indiana, applying the Barker[3] test, held the 13-year delay did not prejudice the defendant or violate his due process rights. See Azania, at 1005, 1010. The court noted any prejudice suffered by the defendant due to the passage of time did not rise to the level of violating due process. Id., at 1010. The defendant had the opportunity to present evidence, and the jury could consider any impact the passage of time had on a witness's ability to testify.

Here, the trial court likewise applied Barker, and found the delay did not prejudice appellant or violate his due process rights. Trial Court Opinion, 7/29/13, at 6-12. The court focused much of its analysis on the fourth factor, prejudice to the defendant.

Addressing appellant's claim that he was prejudiced by the delay because multiple witnesses died through the passage of time, the court found he did "not specify which [potential witnesses] would have testified … on his behalf." Id., at 8. Further, appellant

_____

[3] In Barker, the United States Supreme Court established a balancing test to determine whether there was a violation of a defendant's right to a speedy trial and due process. Barker, at 530-33. The Court noted four factors to consider: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant. Id. Although the High Court did not regard any of the four factors as either a "necessary or sufficient condition to the finding of a deprivation of the right of speedy trial[,]" it opined courts are still required to engage in a "difficult and sensitive balancing process." Id., at 533.

did not describe any additional testimony they would have provided to assist him.  Id. The court noted the testimony of these individuals was preserved by transcripts, which were read to the jury.  Id.  "[W]ithout more specific allegations as to what testimony was eliminated by the passage of time, the mere general allegation that the read transcripts from prior testimony was not as powerful as live testimony is insufficient to establish sufficient prejudice to [appellant]."  Id., at 8-9.

The trial court also addressed appellant's claim that witnesses could not recall helpful details regarding his 1980 voluntary manslaughter conviction.  See N.T. Sentencing, 6/18/12, at 80-82.  Specifically, Detective Crews could not recall specific actions he took during that investigation.  See id., at 87-88.  The court concluded appellant again did not offer any specific mitigating information that was not provided by Detective Crews's testimony.  Trial Court Opinion, 7/29/13, at 10.  Appellant merely claims the detective's loss of memory prejudiced him, without discussing how any unstated information would have benefitted the defense.

The trial court made the same conclusion regarding the testimony of Sonya Rollins, the sister of the victim in the 1980 homicide.   In particular, Rollins could not recall specifics surrounding her brother's death.  See N.T. Sentencing, 6/18/12, 46-47, 50, 58-59.  The court held a more "vivid recollection of the more horrific aspects of the underlying crime" would not have "assisted [appellant] in any manner."  Trial Court Opinion, 7/29/13, at 10.   Appellant made no specific arguments regarding any mitigating evidence that was lost, and the court found no prejudice.

The trial court also found appellant's complaint that his Eighth Amendment rights were violated was without merit, holding "the Eight[h] Amendment does not protect against delaying a sentence of death because those delays are designed to afford a defendant his constitutional right to appeal and cannot become grounds for an additional

appealable issue." Id., at 10-11 (citing People v. Simms, 736 N.E.2d 1092, 1141 (Ill. 2000)). The court noted appellant invoked his right to appeal and continued those appeals on multiple occasions. Id., at 12. "Therefore, [appellant]'s complaint that the delay in his sentencing violates his due process rights, as well as his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments is unsubstantiated." Id.

After careful review, we affirm the trial court's decision regarding this issue. Prior testimony was preserved, absences and lapses in memory have not been shown to involve identifiable exculpatory, mitigating, or even helpful information, and in the end, appellant has not demonstrated legal prejudice. A question regarding whether a due process violation occurred is a question of law for which the standard of review is de novo and the scope of review is plenary. Commonwealth v. Brown, 52 A.3d 1139, 1162 (Pa. 2012) (citations omitted). Upon such review, we affirm the determinations and ruling of the trial court.

Additionally, appellant asserts he was prejudiced by the length of time he has spent on death row. Appellant has been on death row for over 18 years, and he argues his time spent there waiting to be executed constitutes a "wanton infliction of harm in violation of the Eight[h] Amendment of the United States Constitution and Article 1, Section 13 of the Pennsylvania Constitution." Appellant's Brief, at 18.

Appellant relies only on a dissenting statement by Justice Breyer in Foster v. Florida, 537 U.S. 990. 991-93 (U.S. 2002) (Breyer, J., dissenting). There, the Court denied certiorari when a death-row inmate claimed the 27 years he served in prison awaiting his execution amounted to cruel and unusual punishment. Id., at 990, 991-92. Justice Breyer, dissenting from the Court's denial of certiorari, noted if the inmate was executed, he would have been "punished both by death and also by more than a generation spent in death row's twilight." Id., at 993.

This Court has rejected the notion that excessive delays in carrying out a death sentence constitute cruel and unusual punishment, opining an "appellant must show that the delay was a deliberate tactical move in bad faith by the Commonwealth and that he was prejudiced by it in order to establish a denial of due process." Commonwealth v. Clayton, 532 A.2d 385, 388 n.2 (Pa. 1987). Appellant has filed numerous appeals and has failed to produce any evidence that the challenged delay was a tactical move the Commonwealth made in bad faith. Therefore, the trial court appropriately denied appellant's motion to bar the death penalty.

## II. Evidence of Appellant's Prior Voluntary-Manslaughter Conviction

In 1980, Rollins witnessed appellant fatally stab her brother, George Sutton. Appellant pled guilty to voluntary manslaughter. Appellant asserts the trial court erred in admitting evidence of that case, arguing he was prejudiced by the presentation of facts and circumstances behind that conviction. Specifically, he claims "the Commonwealth agreed at the time of conviction, presumably after thoroughly investigating the matter, that [v]oluntary [m]anslaughter was appropriate. To present evidence now that demonstrated a brutal, unprovoked and malicious killing, a crime much worse than that agreed to by the Commonwealth, is simply not fair." Appellant's Brief, at 20.

In a capital case, the trial court is required to instruct the jury regarding the aggravating circumstances specified in 42 Pa.C.S. § 9711(d), for which there is some evidence, id., § 9711(c)(1)(i). One of the aggravating circumstances included in subsection (d) is whether "[t]he defendant has been convicted of voluntary manslaughter … committed either before or at the time of the offense at issue." Id., § 9711(d)(12). Appellant does not contend the trial court should have kept the voluntary-manslaughter conviction from the jury. Rather, he argues the underlying facts of his voluntary-manslaughter conviction should have been withheld from the jury.

This Court, in Commonwealth v. Beasley, 479 A.2d 460 (Pa. 1984), stated:

> Consideration of prior "convictions" was not intended to be a meaningless and abstract ritual, but rather a process through which a jury would gain considerable insight into a defendant's character. The nature of an offense, as ascertained through examination of the circumstances concomitant to its commission, has much bearing upon the character of a defendant, and, indeed, without reference to those facts and circumstances, consideration of "convictions" would be a hollow process, yielding far less information about a defendant's character than is relevant.

> Convictions are defined by the essential and necessary facts upon which they are based, and judgments of sentence flow naturally from, and form an integral part of those convictions. Thus, reason impels that the construction of the term "convictions" … permit[s] consideration of the essential and necessary facts pertaining to the convictions, including the circumstances of the crimes and the sentences imposed.

Id., at 465.

Further, "the jury not only should, but indeed must know more than the mere fact of conviction if it is to carry out its sentencing role properly." Commonwealth v. Flor, 998 A.2d 606, 623 (Pa. 2010) (citations omitted); see also Commonwealth v. Rios, 920 A.2d 790, 814 (Pa. 2007) (quoting Commonwealth v. Marshall, 643 A.2d 1070, 1074 (Pa. 1994)); Commonwealth v. Young, 637 A.2d 1313, 1320 (Pa. 1993).

The admissibility of evidence is "within the sound discretion of the trial court … [and we] will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion." Flor, at 623 (citations omitted).

The voluntary-manslaughter conviction was the basis for an aggravating circumstance being pursued by the Commonwealth under 42 Pa.C.S. § 9711(d)(12). As there are countless scenarios that could comprise this crime, the jury should know the facts behind the conviction to appropriately balance the (d)(12) aggravator against any mitigating circumstances; without the basic facts, the jury is short-changed. We find the trial court did not abuse its discretion by admitting this evidence.

## III.  Testimony About Appellant Reading Homicide Books

Appellant contends "the trial court erred in allowing evidence that around the time of the 1980 homicide of George Sutton, [a]ppellant read certain books" about homicide and how to commit the perfect crime.  Appellant's Brief, at 21.  Specifically, appellant asserts the evidence had no probative value and was "extremely prejudicial."  Id., at 24.  Appellant, however, did not raise his objections at trial.

"Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."  Pa.R.A.P. 302(a).  The record reveals appellant did not object when the trial court announced its ruling on the Commonwealth's motions in limine regarding this evidence.  See N.T. Sentencing, 6/18/12, at 4-14.  Further, no objections were made during the penalty-phase hearing when the Commonwealth introduced the evidence.  See id., at 38-46.  Accordingly, this issue is waived.

## IV.  Motion for Mistrial

Appellant contends the trial court erred in denying his motion for a mistrial after Dr. John O'Brien, a Commonwealth witness, testified at the penalty-phase hearing that appellant had been previously convicted and sentenced to death.  Appellant asserts he was prejudiced by this testimony because it signaled to the jury that he was already convicted and sentenced to death by an earlier jury.  Further, he asserts Dr. O'Brien intentionally made the statement about being on death row to prejudice him.

Dr. O'Brien was asked questions regarding appellant's prior diagnoses for depression and anxiety.  N.T. Sentencing, 6/21/12, at 258-59.  The prosecutor asked Dr. O'Brien, "[Y]ou have heard that [appellant] has been diagnosed with both depression and anxiety in the past, correct?"  Id., at 259.  Dr. O'Brien responded, "[T]he only diagnosis of that that I have seen has been in the correctional records subsequent to his having been found guilty and put on death row."  Id.  Appellant's counsel immediately

objected and moved for a mistrial, which was denied. Id., at 259-60. The trial court had a brief discussion with the prosecutor and appellant's counsel on how to phrase a curative instruction for the jury regarding Dr. O'Brien's statement. Id., at 260-65. The court then instructed the jury:

> There was a reference through the witness about death row. Following a conviction of [f]irst[-d]egree [m]urder you are placed on death row. That's what happens. You are not to draw any kind of inferences adverse to [appellant] or his guilt. That's just something that happens. I just wanted to explain that to you.

Id., at 266-67.

We review the denial of a motion for mistrial under the abuse of discretion standard. Commonwealth v. Travaglia, 28 A.3d 868, 879 (Pa. 2011) (citation omitted). "A mistrial is an extreme remedy that is required only where the challenged event deprived the accused of a fair and impartial trial." Id. (citation omitted). In the instant case, the prosecutor asked Dr. O'Brien a question that was not such as would be expected to elicit a response about death row. The trial court provided a curative instruction to the jury after consulting with both parties, the gist of which is that appellant was on death row because of his arrest on this case, not some time prior. As such, the instruction dispelled the potential prejudice from a potential inference of prior criminality that formed the basis of the objection.

The law presumes juries follow a court's instructions. Commonwealth v. Baker, 614 A.2d 663, 672 (Pa. 1992) (citing Commonwealth v. Stoltzfus, 337 A.2d 873, 879 (Pa. 1975)). The trial court did not abuse its discretion by denying appellant's motion for a mistrial because it provided an immediate curative instruction. We agree that "[i]n light of the … curative instruction and the unintentional elicitation from the Commonwealth, … any prejudice the 'death row' reference may have caused was insufficient to require a mistrial." Trial Court Opinion, 7/29/13, at 17. Moreover, there was no other reference to

appellant's status on death row for the remainder of the penalty-phase hearing. Therefore, we conclude the court did not abuse its discretion when it denied appellant's motion for a mistrial.

## V. Jury Instruction for Continued Deliberation

Appellant argues the trial court erred when it ordered the jury to continue deliberating after the jury informed the court that it was unable to reach a unanimous verdict. He asserts the court abused its discretion because the jury should have been discharged pursuant to 42 Pa.C.S. § 9711(c)(1)(v),[4] and he should have been sentenced to life imprisonment.

During deliberations, the jury sent out two questions for clarification. Later that afternoon, approximately four hours after deliberations started, the jury informed the court it was "'unable to reach a unanimous sentencing verdict.'" N.T. Sentencing, 6/22/12, at 35. The trial court instructed the jury to continue deliberations, stating:

> Ladies and gentlemen, this has been a four-day trial, which, as trials go, it's not a particularly long trial. However, I think that you will probably share my conclusion that it's been a very intense four days of testimony; a lot of expert witnesses, a lot of testimony, a lot of very complicated testimony. At this point in time, the [c]ourt feels obligated to request that you return to your deliberations. I want to make sure that, in point of fact, we've exhausted the possibilities of arriving at a unanimous verdict. So, at this point in time, I'm going to ask you to go back. I would suggest that you … start from the beginning, if you would; go over the aggravating circumstances; get that decided; go over the mitigating circumstances, and then review that with each other and see if you can resolve any outstanding differences and we'll see how that goes. So, at this point, I'm going to send you back and ask that you return to your deliberations.

Id., at 38-39.

---

[4] "The court may, in its discretion, discharge the jury if it is of the opinion that further deliberation will not result in a unanimous agreement as to the sentence, in which case the court shall sentence the defendant to life imprisonment." Id.

"The amount of time a jury is kept together to deliberate is within the discretion of the trial judge, and that decision will only be reversed for an abuse of discretion." Commonwealth v. Wharton, 665 A.2d 458, 461 (Pa. 1995) (citation omitted). Further, this Court has previously held there is no abuse of discretion when a court instructs a jury to continue to deliberate a death sentence after a lengthy trial. See Commonwealth v. Chester, 587 A.2d 1367, 1381 (Pa. 1991) (finding trial court did not coerce verdict of death by returning jury for deliberations after insistence that process was futile); see also Commonwealth v. Penn, 439 A.2d 1154, 1161 (Pa. 1982) (finding no abuse of discretion after jury announced it was deadlocked after two days and returned verdict on fourth day). Here, the jury had to consider evidence regarding appellant's prior voluntary-manslaughter conviction, emotional distress, and childhood abuse. The jury then had to weigh the evidence to determine if the aggravating circumstance of voluntary manslaughter outweighed the mitigating circumstances of emotional distress and an abusive childhood. Given the complex nature of all the evidence, the trial court did not abuse its discretion by instructing the jury to continue deliberations.

## VI. Voir Dire

Appellant argues the trial court denied him due process and the right to a fair and impartial jury by refusing to permit the following voir dire question: "'You will hear that [appellant] was convicted, by plea of guilty, to the crime of [v]oluntary [m]anslaughter in 1980. Is there any one of you who feels that[,] because of the defendant's prior convictions, that you would not consider a sentence of life imprisonment[?]'" Appellant's Proposed Voir Dire Questions, 6/11/12, No. 11. Appellant claims he should have been permitted to ask this specific question to "life-qualify" potential jurors pursuant to Morgan v. Illinois, 504 U.S. 719, 736-37 (1992), as "[t]he proposed question does nothing more than identify potential jurors who cannot consider a sentence of life imprisonment for a

second-time killer and asks only if the jurors can still consider life imprisonment despite the fact that [a]ppellant has previously been convicted of [v]oluntary [m]anslaughter." Appellant's Brief, at 48.

The Commonwealth contends the trial court properly precluded the question as it "sought to place before the jury information regarding a specific aggravating circumstance, appellant's prior conviction for [v]oluntary [m]anslaughter, in order to learn what the prospective jurors' likely decision would be regarding the specific facts to be established during the penalty[-]phase proceedings." Commonwealth's Brief, at 58. The Commonwealth relies on Commonwealth v. Mattison, 82 A.3d 386 (Pa. 2013), which held: (1) the trial court did not abuse its discretion by precluding the defendant's proposed voir dire questions that would have disclosed his prior murder conviction before the jury's determination of his guilt; and (2) the defendant was not entitled to separate juries for the guilt and penalty phases of trial in order to "life-qualify" the penalty-phase jury. See Commonwealth's Brief, at 56-57; Mattison, at 397. The Commonwealth also cites Commonwealth v. Bomar, 826 A.2d 831 (Pa. 2003), in which we stated "[n]either counsel for the defendant nor the Commonwealth should be permitted to ask direct or hypothetical questions designed to disclose what a juror's present impression or opinion as to what his decision will likely be under certain facts which may be developed in the trial of a case." Id., at 849. The Commonwealth further argues preclusion of the proposed question did not limit appellant's ability to "life-qualify" the jury because appellant's counsel, as well as the court itself, already "life-qualified" each potential juror. Commonwealth's Brief, at 53-56.

The trial court concluded appellant's claim failed as a matter of law because his voluntary-manslaughter conviction was an aggravating circumstance in his present case. The court reasoned "[u]nder [§] 9711(c)(1)(iv), the verdict must be a sentence of death if

the jury unanimously finds at least one aggravating circumstance[.]" Trial Court Opinion, 7/29/13, at 22. Notwithstanding this was the incorrect standard as it did not account for the two mitigating circumstances, which would be weighed against the aggravator,[5] we find the trial court's decision to preclude the proposed voir dire question was proper.

"The scope of voir dire rests in the sound discretion of the trial court, whose decision will not be reversed on appeal absent palpable error." Commonwealth v. Karenbauer, 715 A.2d 1086, 1094 (Pa. 1998) (citation omitted). "The purpose of voir dire is to ensure [a] … competent, fair, impartial, and unprejudiced jury." Id. (citations omitted).

The term "life-qualify" refers to the process to identify prospective jurors who have a fixed opinion that a sentence of death should always be imposed for a conviction of first-degree murder. Commonwealth v. Keaton, 729 A.2d 529, 542 n.9 (Pa. 1999). There is no constitutional requirement that each prospective juror be "life-qualified." Id., at 543. However, if the defendant wishes to "life-qualify" any or all venirepersons, voir dire must include such an inquiry. Morgan, at 733-34. In Morgan, the United States Supreme Court stated, "general questions of fairness and impartiality" are not sufficient to detect jurors who would automatically vote for the death penalty upon conviction, regardless of any mitigating factors. Id., at 735. The Court noted:

> [T]he belief that death should be imposed ipso facto upon conviction of a capital offense reflects directly on that individual's inability to follow the law. Any juror who would impose death regardless of the facts and circumstances of conviction cannot follow the dictates of law. It may be that a juror could, in good conscience, swear to uphold the law and yet be unaware that maintaining such dogmatic beliefs about the death penalty

---

[5] Section 9711(c)(1)(iv) further provides the verdict must be death if "the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances." Id. In any other circumstance, including if the jury finds the aggravating circumstances do not outweigh the mitigating circumstances, the sentence must be life imprisonment. Id.

would prevent him or her from doing so. A defendant on trial for his life must be permitted on <u>voir</u> <u>dire</u> to ascertain whether his prospective jurors function under such misconception.

<u>Id.</u>, at 735-36 (footnote and internal citations omitted).

Appellant's proposed question is impermissible under <u>Bomar</u> as it is a question designed to elicit what the jurors' reactions might be when presented with a specific aggravating circumstance. <u>See</u> <u>Bomar</u>, at 849 ("Neither counsel for the defendant nor the Commonwealth should be permitted to ask direct or hypothetical questions designed to disclose what a juror's present impression or opinion as to what his decision will likely be under certain facts which may be developed in the trial of a case."). Moreover, the jury is expressly permitted, under 42 Pa.C.S. § 9711(d)(12), to consider appellant's prior manslaughter conviction as an aggravating circumstance, and 42 Pa.C.S. § 9711(c)(i)(iv) sets forth precisely how the jury should consider aggravating circumstances in its deliberations. Therefore, the trial court followed the precise prescribed statutory scheme by permitting the Commonwealth to present appellant's prior conviction as an aggravating circumstance.

Further, as the Commonwealth points out, each prospective juror was already "life-qualified" on appellant's first-degree murder conviction. <u>See</u> Commonwealth's Brief, at 53-56 (citations omitted). Therefore, any juror who would impose death, regardless of the facts or circumstances surrounding the case, would have been identified and excluded.

Accordingly, the judgment of sentence is affirmed.

Mr. Justice Baer and Mr. Justice Stevens join the opinion.

Mr. Chief Justice Saylor files a dissenting opinion in which Madame Justice Todd joins.