J-S29022-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
:           PENNSYLVANIA
:
v.                :
:
:
JOSEPH VIRUET            :
:
Appellant   :   No. 3765 EDA 2015

Appeal from the Judgment of Sentence April 1, 2013
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002423-2011

BEFORE:  PANELLA, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY MURRAY, J.:           **FILED JUNE 22, 2018**

Joseph Viruet (Appellant) appeals from the judgment of sentence

entered after a jury convicted him of first-degree murder[1] and related

offenses.  We affirm.

The trial court summarized the facts as follows:

> On the night of January 17, 2009, Angel Padilla (the victim), Robert Mokshefsky (Mokshefsky), Humberto Venerio (Venerio), and Michael Rodriguez (Rodriguez) were on the corner of A and Westmoreland Streets [in Philadelphia], selling marijuana. [Appellant] showed up to the area . . . around 10:00 or 11:00 P.M.[,] engaged in conversation [with the victim and] inquired about a missing chain necklace.  [Appellant] and the victim . . . also argued over money that the victim allegedly owed [Appellant. Appellant] left, and the group carried on with selling their marijuana.

---

* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2502(a).

At around 2:00 A.M., the group was standing on the corner . . . of Ella and Westmoreland Streets, when shots were fired in their direction by [Appellant]. The victim was hit first, and Mokshefsky tried to cover him with his arms. As a result, Mokshefsky was shot in the wrist and the elbow. Rodriguez and Venerio took off running; when they realized that Mokshefsky had fallen, they doubled back to pick him up, and continued running.

. . . Venerio called the police. . . . Mokshefsky was taken by ambulance to [the h]ospital, where he learned that the victim had been killed. Meanwhile, Rodriguez and Venerio returned to A and Westmoreland Streets, where they learned that the victim had been shot and killed. Rodriguez and Venerio were then taken by police to the Homicide Unit in separate cars.

Trial Court Opinion, 3/31/16, at 2-3 (citations to trial notes of testimony and footnotes omitted).

On that same night and early morning hours of January 18, 2009, Rodriguez and Venerio gave statements to police. They both stated that a man named "Ace," along with his friend, purchased marijuana from the victim but were unhappy with the quantity. Rodriguez stated that five to eight minutes after Ace and his friend left, he heard gunshots and saw Ace's friend shooting at them. Rodriguez was shown a photograph of Ferdinand Robles and identified him as Ace; Rodriguez also identified Louis Hernandez in a photo array as the shooter. Meanwhile, Venerio told police that about fifteen minutes after the marijuana sale to Ace and his friend, the two men returned to the corner, and Ace's friend shot at them. Venerio likewise identified Louis Hernandez as the shooter in a photo array.

The next day, January 19, 2009, however, Rodriguez gave a second statement to police, claiming that he made a mistake regarding the identity

of the shooter and that he did not know who the shooter was. Venerio also gave a second statement, admitting "that everything he had previously told police about Ace and his friend, Louis Hernandez . . . was false." Trial Court Opinion, 3/31/16, at 10. Venerio stated that he "thought" Appellant, whom he had known for a few years, was the shooter, and identified him in a photograph. *Id.*

Also on January 19, 2009, Mokshefsky — who was shot in the wrist and elbow — told police that at around 10:00 or 11:00 p.m. on the night of the shooting, Appellant — whom he had known for three to four years — argued with the victim about a debt owed to Appellant. Mokshefsky further stated that sometime after 1:00 a.m., a customer had argued with the victim about the amount of marijuana purchased. The customer left in a car, but within two to four minutes, a person wearing all black shot at the group. Mokshefsky did not know the customer and was not sure if the customer was the shooter.

Approximately six months later, on July 15, 2009, Venerio gave a third statement to police, stating that he was not truthful when he said he was "not sure" if Appellant was the shooter, and instead, he was sure that it was Appellant. *Id.* at 10. Venerio explained that he previously said he was "not sure" because he did not want to put himself or his family in danger, because Appellant knew where he lived. On July 21, 2009, Rodriguez likewise gave a third statement to police in which identified Appellant as the shooter. Rodriguez stated that he did not previously identify Appellant out of fear. On

August 21, 2009, Mokshefsky gave a second statement to police, also identifying Appellant as the shooter and explaining that he did not previously provide this information because he did not want to put himself in jeopardy.

Appellant was charged with first-degree murder and related offenses. The case proceeded to a jury trial in November 2012, and ended in a mistrial after the jury was unable to reach a verdict. **See** Appellant's Brief at 5.[2]

The case proceeded to a second jury trial on March 26, 2013. The Commonwealth called Rodriguez, Venerio, and Mokshefsky as witnesses. Rodriguez testified that he and Appellant "grew up together," but denied seeing him on the day of the shooting. N.T. Trial, 3/27/13, at 77-78. The Commonwealth asked Rodriguez if he could see the shooter, and Rodriguez responded, "Kind of yeah," but the Commonwealth did not ask him any further questions regarding the appearance or identity of the shooter.[3] **Id.** at 79. Venerio and Mokshefsky each stated that they could not see the shooter. **Id.** at 128, 192. The Commonwealth confronted all three witnesses with their prior statements to police. Rodriguez and Venerio each agreed that they had

---

[2] The certified record does not include any information about the first trial.

[3] The trial court opinion stated that Rodriguez "identified [Appellant] in court as the shooter." Trial Court Opinion, 3/31/16, at 9, *citing* N.T. Trial, 3/27/13, at 98. We note our agreement with Appellant that Rodriguez made no such statement. **See** Appellant's Brief at 9 n.1. Instead, at trial, Rodriguez identified Appellant in court as the person he had named as the shooter in his July 21, 2009 statement — a statement that he was disavowing at trial. N.T., 3/27/13, at 97-98.

- 4 -

provided the responses in all three statements as read aloud by the prosecutor. *Id.* at 83-105 (Rodriguez), 131-174 (Venerio). Furthermore, Rodriguez conceded that he "lie[d] on at least one of the" statements, but the Commonwealth did not question him further. *Id.* at 111. Finally, both Rodriguez and Venerio testified that they did not want to be at the trial. *Id.* at 106, 175.

Mokshefsky testified that he could not recall whether he made the statements that were memorialized in his January 19, 2009 statement (in which he stated that he was "not sure" if the disgruntled customer was the shooter), but acknowledged that the signature on the statement was his. *Id.* at 195-216. When confronted with his August 21, 2009 statement, however, Mokshefsky, denied that he had stated Appellant was the shooter, and denied that he signed the signature that was attributed to him. *Id.* at 217, 219.

Furthermore, we note Philadelphia Police Detective Joseph Bamberski's testimony that based on Rodriguez's and Venerio's initial statements that Louis Hernandez was the shooter, an arrest warrant was issued for Hernandez. However, the detectives subsequently learned that Hernandez had been court-committed to a school institution since 2007, and therefore could not have committed the shooting on January 17, 2009. Pertinently, Rodriguez, Venerio, and Mokshefsky acknowledged that they had previously told police that Appellant was the shooter, but recanted those statements. The Commonwealth then introduced those prior statements as evidence.

On April 1, 2013, the jury found Appellant guilty of first-degree murder, possessing an instrument of crime, aggravated assault, and carrying a firearm in Philadelphia.[4]  The same day, the trial court imposed an aggregate sentence of life imprisonment without parole and a consecutive 1 to 5 years' imprisonment.

Appellant filed a timely post-trial motion, which the trial court denied. He then filed a notice of appeal on September 5, 2013.[5]  Appellant presents one issue for our review:

> Was the evidence insufficient as a matter of law to sustain the verdict where it was based solely on evidence of unsworn, out-of-court prior inconsistent statements, a violation of the Due Process Clause of the Fourteenth Amendment to the United States

---

[4] 18 Pa.C.S.A. §§ 907, 2702(a), and 6108.

[5] We note the delay since the initial September 5, 2013 notice of appeal. Appellant's appeal was initially docketed at 3151 EDA 2013, but this Court dismissed it due to the failure of his counsel, Carmella Jacquinto, Esquire, to file a brief.  On November 6, 2015, the trial court reinstated Appellant's direct appeal rights *nunc pro tunc* and he filed a timely notice of appeal in the present docket, 3765 EDA 2015.  Despite being granted five extensions of time to file an appellate brief, Attorney Jacquinto ultimately advised this Court that she was unable to continue representing Appellant, and then failed to comply with this Court's order to withdraw her appearance.  Thus, on May 26, 2017, this Court directed that Attorney Jacquinto be removed as counsel.  On remand, the trial court appointed another attorney to represent Appellant, but at some point thereafter appointed present counsel, Daniel Silverman, Esquire.  This Court granted counsel's request to remand this case so that he could file a supplemental Pa.R.A.P. 1925(b) statement.   On September 18, 2017, Attorney Silverman filed the supplemental statement, which argued, *inter alia*, that the evidence was insufficient to sustain the verdicts.  Attorney Silverman timely filed a brief with this Court, and the Commonwealth, after receiving four extensions of time, filed an appellee's brief on April 6, 2018.

Constitution?

Appellant's Brief at 3.[6]

In its Pa.R.A.P. 1925(a) opinion, the trial court rejected Appellant's argument that a criminal conviction cannot be based solely on prior inconsistent statements. The trial court cited **Commonwealth v. Brown**, 52 A.3d 1139 (Pa. 2012), which held "that admissible prior inconsistent statements must be considered by a reviewing court in the same manner as any other type of validly admitted evidence when evaluating a sufficiency of the evidence claim." Trial Court Supplemental Opinion, 9/28/17, at 3.

Appellant nonetheless emphasizes that because no witness testified at trial that Appellant committed any crime, his conviction was based solely on three witnesses' out-of-court statements, which were expressly disavowed at trial. Appellant further stresses that the Commonwealth did not present any evidence as to which of each witnesses' prior inconsistent statements was valid or truthful. Appellant argues that his federal due process rights were violated because the out-of-court statements were unsworn written statements and not subject to cross-examination. Appellant concedes that in **Brown**, our Supreme Court held that due process is not violated when a conviction is based solely on out-of-court statements that are recanted at trial.

---

[6] While Appellant did not raise a sufficiency challenge in his post-trial motion, "[u]nder Pa.R.Crim.P. 606(A)(7), a defendant is entitled to raise the issue of sufficiency for the first time on appeal." **See Commonwealth v. Wright**, 832 A.2d 1104, 1110 (Pa. Super. 2003).

However, Appellant asserts that "**Brown** was wrongly decided" and "[t]he overwhelming majority of state courts" have adopted a *per se* rule that a prior inconsistent statement, which is recanted at trial, alone is not sufficient to support a conviction. Appellant's Brief at 11-13 (citing cases). Appellant acknowledges that "this Court does not have the authority to refuse to follow Supreme Court precedent", but urges us to issue a decision in which we "invite the Supreme Court" to revisit its decision in **Brown**. *Id.* at 13.

We are mindful that "[a] question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is plenary." **Commonwealth v. Smith**, 131 A.3d 467, 472 (Pa. 2015), *citing* **Brown**, 52 A.3d at 1162. Further, **Brown** remains good law in Pennsylvania. **See Commonwealth v. Brown**, 134 A.3d 1097, 1104 (Pa. Super. 2016) (citing **Brown** to hold that the jury was free to credit witnesses' prior inconsistent statements given to police over their recantations at trial); **Commonwealth v. Lofton**, 57 A.3d 1270, 1275 (Pa. Super. 2012) (citing **Brown** to hold "jury was clearly apprised of the discrepancies between the" two witnesses' out-of-court statements and inconsistent in-court testimony and was free to reject the in-court testimony and accept the veracity of the out-of-court statements).

In **Brown**, three eyewitnesses told police that they saw the defendant, Brown, shooting at a group of three men, two of whom died. **Brown**, 52 A.3d at 1144-46. At the jury trial, however, the three witnesses disavowed their

prior statements to police. *Id.* at 1148-50 & n.6. Nevertheless, the jury found the defendant guilty of two counts of first-degree murder. *Id.* at 1150. On appeal, the defendant challenged the sufficiency of the evidence, arguing that his convictions, which were supported solely by out-of-court statements that were recanted at trial, violated the federal and Pennsylvania due process clauses. *Id.* at 1153. Our Supreme Court denied relief on this issue, holding:

> [A] conviction which rests solely on the prior inconsistent statements of witnesses who testify at trial, where such statements were properly admitted, but recanted at trial, does not offend due process[,] provided the makers of such statements have been made available for cross examination, and, based on the content of the statements as a whole, a finder-of-fact could reasonably find that every element of the offense or offenses charged has been proven beyond a reasonable doubt.

*Id.* at 1184.

Based on the above authority, we hold that the trial court did not err in relying on *Brown* to deny Appellant relief on his due process and sufficiency argument. We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/22/18