[J-51-2020] [MO: Donohue, J.]
**IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 30 EAP 2019 |
| | : | |
| Appellee | : | Appeal from the Judgment of |
| | : | Superior Court entered on March 5, |
| | : | 2019 at No. 3246 EDA 2017 |
| v. | : | affirming the Judgment of Sentence |
| | : | entered on September 12, 2017 in |
| | : | the Court of Common Pleas, |
| KEITH ALEXANDER, | : | Philadelphia County, Criminal |
| | : | Division at No. CP-51-CR-0005971- |
| Appellant | : | 2016. |
| | : | |
| | : | SUBMITTED:  April 28, 2020 |

**DISSENTING OPINION**

**JUSTICE DOUGHERTY**                                    **DECIDED:  December 22, 2020**

"What we can decide, we can undecide."  *Kimble v. Marvel Entm't, LLC*, 576 U.S. 446, 465 (2015).  This much is clear.  But whether we **should** undo a given precedent is a different matter entirely, and "stare *decisis* teaches that we should exercise that authority sparingly."  *Id.*  In that spirit, "we have recognized that changing course demands a special justification — over and above the belief that [a] precedent was wrongly decided[.]"  *Commonwealth v. Reid*, 235 A.3d 1124, 1168 (Pa. 2020).  Because I believe the majority does not identify a special justification for overruling *Commonwealth v. Gary*, 91 A.3d 102 (Pa. 2014) (plurality), wherein a majority of this Court adopted the federal automobile exception to the warrant requirement, I respectfully dissent.

*Stare decisis*, which means "to stand by things decided," is the legal term for fidelity to precedent.  BLACK'S LAW DICTIONARY 1696 (11th ed. 2019).  Fidelity to precedent is "a foundation stone of the rule of law," *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782,

798 (2014), a principle of policy necessary "to avoid an arbitrary discretion in the courts." THE FEDERALIST NO. 78, p. 529 (J. Cooke ed. 1961) (A. Hamilton). *See, e.g., June Medical Services L.L.C. v. Russo*, ___ U.S. ___, 140 S.Ct. 2103, 2134 (2020) (Roberts, C.J., concurring) ("The constraint of precedent distinguishes the judicial method and philosophy from those of the political and legislative process.") (internal quotations and citation omitted). We have emphasized that we honor the *stare decisis* doctrine in this Commonwealth to ensure "evenhanded, predictable, and consistent development of legal principles, foster[ ] reliance on judicial decisions, and contribute[ ] to the actual and perceived integrity of the judicial process." *Stilp v. Commonwealth*, 905 A.2d 918, 954 n.31 (Pa. 2006) (internal quotations and citation omitted); *accord Payne v. Tennessee*, 501 U.S. 808, 827 (1991). The doctrine, from a pragmatic standpoint, is "the means by which we ensure that the law will not merely change erratically, but will develop in a principled and intelligible fashion." *Vasquez v. Hillery*, 474 U.S. 254, 265 (1986).

"Of course, it is also important to be right, especially on constitutional matters," where the legislature cannot fix our errors through ordinary legislation. *Gamble v. United States*, ___ U.S. ___, 139 S.Ct. 1960, 1969 (2019); *see Agostini v. Felton*, 521 U.S. 203, 235 (1997) (the need to adhere to *stare decisis* "is at its weakest when we interpret the Constitution because our interpretation can be altered only by constitutional amendment or by overruling our prior decisions"). It is for precisely this reason that we have oft stated that *stare decisis* "is not an inexorable command to be followed blindly when such adherence leads to perpetuating error." *Stilp*, 905 A.2d at 967. Still, even in constitutional cases, it is settled that a departure from precedent "demands special justification." *Arizona v. Rumsey*, 467 U.S. 203, 212 (1984). Among the appropriate factors to consider when assessing whether the scales tip in favor of overruling precedent are the "workability" of the existing standard, "the antiquity of the precedent, the reliance interests

at stake, and . . . whether the decision was well reasoned." *Montego v. Louisiana*, 556 U.S. 778, 792-93 (2009). But, again, and critically, "an argument that we got something wrong — even a good argument to that effect — cannot by itself justify scrapping settled precedent." *Kimble*, 576 U.S. at 455; *see id.* ("The doctrine rests on the idea, as Justice Brandeis famously wrote, that it is usually more important that the applicable rule of law be settled than that it be settled right.") (internal quotation and citation omitted); *see also Knick v. Twp. of Scott*, ___ U.S. ___, 139 S.Ct. 2162, 2190 (2019) (Kagan, J., dissenting) ("[T]he entire idea of *stare decisis* is that judges do not get to reverse a decision just because they never liked it in the first instance. Once again, they need a reason **other than** the idea that the precedent was wrongly decided.") (internal quotations and citation omitted; emphasis in original).

In my respectful view, the majority's reasons for jettisoning *Gary* reduce to little more than an ardent and sincere belief that it was wrongly decided, both on its own terms and in light of prior precedent. For my own part, I actually share those beliefs to a significant degree, as I have serious misgivings about the federal automobile exception's compatibility with Article 1, Section 8 of the Pennsylvania Constitution, for all the reasons Justice Todd explained in her persuasive dissent in *Gary*. My deeper concern, however, is that the *Gary* Court expressly rejected that dissenting position, notwithstanding its persuasiveness or merit — a fact the majority here concedes. *See* Majority Opinion at 38 ("the Commonwealth is correct that the *Gary* plurality could have accepted Justice Todd's cogent analysis"). Even now, Chief Justice Saylor, the lone remaining member of the *Gary* majority on this Court, opposes overruling that decision, for which he provided the pivotal fourth vote. *See* Dissenting Opinion (Saylor, C.J.) at 1.[1] So too does Justice

---

[1] The majority asserts my position is wrongly premised on the "fiction" that the *Gary* Court settled the instant issue, *see* Majority Opinion at 41 n.12, and even goes so far as to claim it simply decides "the question that *Gary* left open." *Id.* at 38. Curiously, though, appellant

Mundy. *See* Dissenting Opinion (Mundy, J.) at 1. And I imagine there are many other members of the bench and bar who similarly believe *Gary* was correctly decided; surely the Commonwealth falls into that camp. This reality, that there are reasonable arguments for and against keeping *Gary* on the books, strongly militates in favor of restraint. *See Franchise Tax Bd. of California v. Hyatt*, ___ U.S. ___, 139 S.Ct. 1485, 1505 (2019) (Breyer, J., dissenting) ("While reasonable jurists might disagree about whether [a decision] was correct, that very fact — that [the decision] is not obviously wrong — shows

does not seem to share this novel interpretation of *Gary*, as he has never once in this litigation argued that *Gary* failed to resolve the constitutional question involved. Presumably, this is because it is plain (or at least it was) that "then-Justice Saylor's concurrence espoused the prevailing viewpoint offered by the three other Justices" comprising the *Gary* plurality. Dissenting Opinion (Mundy, J.) at 2. In this regard, I share Justice Mundy's belief that the majority's suggestion that then-Justice Saylor joined the lead Justices in *Gary* in adopting the federal automobile exception even though he actually believed it violated our state charter, is beyond implausible. *See id.* (observing then-Justice Saylor's concurrence "did not offer [ ] an alternative basis pursuant to which this Court should resolve the underlying issues" and concluding the majority here "subverts the clear meaning of the majority of Justices who considered and decided *Gary*"). In any event, I reiterate appellant forwards no argument that the constitutional issue has not been settled; on the contrary, "he just does not care for the solution that *Gary* supplied." Commonwealth's Brief at 17. *See, e.g.*, Appellant's Reply Brief at 9 ("*Gary* should be overruled because it was wrong when it was decided and it is wrong now.").

Moreover, even if the majority was right that *Gary* did not resolve the matter entirely, then this point would serve only to remove any lingering doubt that appellant's current claim is waived since he did not advance any argument in the trial court for interpreting Article I, Section 8 more expansively than its federal counterpart, let alone argue the lower courts should decide any issue that *Gary* supposedly left open. *See infra* n.4. So either *Gary* left open a constitutional question, in which case appellant surely waived that unresolved issue by not raising it below, or *Gary* did not leave open a constitutional question, in which case the majority's own asserted basis for dispensing with *stare decisis* crumbles. *Cf.* Majority Opinion at 41 n.12 ("Had this Court definitively settled whether Article I, Section 8 is compatible with the federal automobile exception, Justice Dougherty's Dissent aptly explains why that hypothetical decision, even if we believed it to be wrong, should remain on the books."). This conflict is irreconcilable, and the majority's refusal to even acknowledge this dispositive point, much less come to terms with it, is both unfortunate and telling.

that today's majority is obviously wrong to overrule it."); *see also Kimble*, 576 U.S. at 455 ("Respecting *stare decisis* means sticking to some wrong decisions.").

Notably, aside from its many attacks on the *Gary* plurality's reasoning, the majority is otherwise unable to point to any significant change since *Gary* was decided, and it foregoes any meaningful weighing of the traditional factors this Court should consider when making the difficult decision whether to cast aside one of our precedents.[2]  *See, e.g.*, *Montego*, 556 U.S. at 792-93.  In this respect, I would ascribe considerably more force to the Commonwealth's discussion of workability and reliance interests engendered by *Gary* than the majority does.  *Compare* Commonwealth's Brief at 16-18 (arguing adherence to *Gary* "is particularly appropriate" because the decision "brought clarity and predictability to a frequently litigated area of the law" and "provided clear guidance to police, the public, and trial courts, and significantly reduced litigation") and Appellant's Reply Brief at 9 (acknowledging one result of the rule adopted in *Gary* is "greater clarity and less litigation") *with* Majority Opinion at 35 (rejecting the Commonwealth's supposed "attempt to insulate *Gary* from review solely because it produced a workable outcome").[3]

---

[2] While it is true the majority briefly recounts the Commonwealth's arguments for adhering to *stare decisis*, it quickly discards those arguments by asserting they "presume[ ] that we are free to ignore the Pennsylvania Constitution simply because it makes law enforcement more difficult, or, worse, that we are to determine the law based on what we think is good for law and order in society."  Majority Opinion at 35.  *See also id.* ("We are not a policy branch, and we cannot ignore constitutional commands even if they make the work of police or prosecutors harder.").  These statements seem to imply that no comparative balancing or weighing of the various *stare decisis* factors is necessary when a majority of a later Court determines a decision rendered by a prior Court incorrectly interpreted the Constitution.  However, at least from my point of view, this explanation is just a more artful way of saying the precedent was wrongly decided.

[3] Parenthetically, I note again that *Gary* was decided only six years ago.  In the past, we have actually weighted a precedent's recent vintage as a factor **in favor** of honoring *stare decisis.  See, e.g.*, *Commonwealth v. Le*, 208 A.3d 960, 976 n.17 (Pa. 2019) (declining to overrule *Commonwealth v. Smith*, 131 A.3d 467 (Pa. 2015), where it "was decided **less than five years ago**, and [nothing] suggests that our experience . . . has revealed it to be unworkable, or that the decision is otherwise infirm") (emphasis added).  It makes little

In sum, despite the majority's best efforts to find and articulate some special justification that would warrant overruling *Gary*, I respectfully conclude that its search has come up short.

As one jurist has wisely explained, any time a court overrules a precedent in the absence of a special justification for doing so, it runs the risk of signifying that later-elected judges are merely interested in seizing opportunities to throw out cases they believe were wrongly decided by earlier-elected judges. *See Hyatt*, 139 S.Ct. at 1506 (Breyer, J., dissenting) ("It is one thing to overrule a case when it defies practical workability, when related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine, or when facts have so changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification. It is far more dangerous to overrule a decision only because [a majority] of a later Court come to agree with earlier dissenters on a difficult legal question.") (internal quotations, brackets, and citation omitted); *see also* Dissenting Opinion (Mundy, J.) at 3 ("When we become untethered from our previous decisions, we instantly implicate this [C]ourt's credibility and our ability to effectively adjudicate the many types of cases upon which litigants look to us for guidance."). On this point, I agree with the Commonwealth that "[i]t is precisely in such circumstances that *stare decisis* is of maximum value for, in the words of Justice Thurgood Marshall, that 'doctrine permits society to presume that bedrock principles are founded in the law rather than in the proclivities of individuals, and thereby contributes to the integrity of our constitutional system of government, both in appearance and in fact.'" Commonwealth's Brief at 22-23, *quoting Hillery*, 474 U.S. at 265-66.

---

sense to me to conclude *Gary*'s "young" age somehow counts as a strike against preserving it, when the age of the five-year-old decision in *Smith* did not.

I acknowledge, of course, that it is inevitable that judges of good faith weighing and applying the various *stare decisis* factors will sometimes disagree about when to overrule an erroneous constitutional precedent. *See Ramos v. Louisiana*, ___ U.S. ___, 140 S.Ct. 1390, 1415-16 (2020) (Kavanaugh, J., concurring) ("even when judges agree that a prior decision is wrong, they may disagree about whether the decision is so egregiously wrong as to justify an overruling"). But when a special justification for reversal is noticeably lacking, as I conclude it is here, then we can hardly fault the Commonwealth for saying what many, if not most, might reflexively think: that the majority has simply "surrendered to the temptation to overrule" *Gary* even though it was a well-reasoned decision that has caused no serious practical problems in the six years since we decided it. *Hyatt*, 139 S.Ct. at 1506 (Breyer, J., dissenting).[4]

---

[4] Even if I agreed with the majority's take on *stare decisis*, I still would be compelled to dissent from its disposition, as I believe the conclusion that appellant has not waived the present issue pursuant to our recent decision in *Commonwealth v. Bishop*, 217 A.3d 833 (Pa. 2019), is plainly incorrect. In *Bishop*, we explained in no uncertain terms that a defendant must "assert **in the trial court** that the state constitutional provision at issue should be interpreted more expansively than the federal counterpart **and** provide reasons for interpreting the state provision differently from the federal provision." *Id*. at 840 (emphasis in original). Here, appellant never argued to the trial court that Article I, Section 8 should be read to require exigency, much less did he articulate any reasons to modify this Court's holding in *Gary* — two points the majority candidly admits. *See* Majority Opinion at 26 n.8 (appellant's "actual argument to the [trial] court did not touch on an argument that *Gary* should be overruled"). This fact alone should resolve this case. *See Bishop*, 217 A.3d at 840; Pa.R.A.P. 302(a). That it for some unexplained reason does not, and that the majority so cavalierly discards our clear and recent instructions in *Bishop*, only lends further credence to the Commonwealth's view that the majority appears more intent on remedying what it views to be an erroneous precedent rather than applying longstanding principles of law, including *stare decisis* and waiver. *See* Commonwealth's Brief at 22 (observing that the only thing of importance that has changed in the six years since *Gary* was handed down is "the membership of this Court").