**[J-65-2020][M.O. – Donohue, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 786 CAP |
| | : | |
| Appellee | : | Appeal from the order dated 8/26/19, |
| | : | entered on 8/27/19, in the Court of |
| | : | Common Pleas, Allegheny County, |
| v. | : | Criminal Division at No. CP-02-CR- |
| | : | 0009056-2001 |
| | : | |
| | : | |
| KENNETH HAIRSTON, | : | |
| | : | |
| Appellant | : | SUBMITTED:  July 28, 2020 |

*CONCURRING OPINION*

**JUSTICE SAYLOR**                                      **DECIDED:  April 29, 2021**

I join Parts I and II(A) and (B) of the majority opinion, concur in the result relative to the balance of the opinion, and write to the following points.

In Part II(C), the majority addresses Appellant's arguments pertaining to alleged assertions by the prosecutor that the sexual abuse that Appellant inflicted upon Chetia Hurtt was itself an aggravating factor.  The majority's main response is that, "[i]n repeatedly arguing about the significance of the abuse, the prosecutor was properly arguing for the jury to find that Hairston had a significant history of violent felony convictions and to give that factor weight when considering it alongside the mitigating circumstances found."  Majority Opinion, *slip op.* at 30 (emphasis omitted).

While the majority's assessment of the prosecutor's intentions may be correct, I find that he variously used loose and objectionable language in pursuing his objective.

As Appellant relates, the prosecutor specifically depicted "what that girl went through" as being an aggravating circumstance in and of itself, rather than focusing on the relevant convictions. Brief for Appellant at 56 (citing N.T., Apr. 18, 2002, at 197-198). Along these lines, the prosecutor also stated, "[a]nd the third aggravating factor is essentially the life of Chetia Hurtt[.]" N.T., Apr. 18, 2002, at 205. In my view, such characterizations, on the prosecutor's part, were misleading.

Significantly, at the point in his remarks where the prosecutor alluded to Ms. Hurtt's life, he was addressing the jurors' selection decision (*i.e.*, the balancing of aggravating and mitigating circumstances), as opposed to their judgment about Appellant's eligibility to receive a death sentence (or their finding of specific aggravating factors). *See* N.T., Apr. 18, 2002, at 205 (reflecting the prosecutor's explanations, leading up to his assertion that Ms. Hurtt's life was an "aggravating factor," and that "it is a balancing factor," . . . "[b]ecause even if you found five mitigating circumstances . . . and only two aggravating ones . . ., it's not a simple mathematical balancing test, the five don't always outweigh the two"). *See generally Commonwealth v. Knight*, 638 Pa. 407, 426-27, 156 A.3d 239, 250-51 (2016) (explaining the eligibility versus selection aspects of a capital sentencing jury's determinations).[1] Thus, the prosecutor seemed to

---

[1] It is important to bear in mind that Appellant's arguments touch on -- and at times conflate -- arguments made by the prosecutor relative to *both* the finding of the aggravating circumstance involving significant history of violent felony convictions, *see* 42 Pa.C.S. §9711(d)(9), *and* the assessment of the impact of the killings on the murder victims' family, *see id.* §9711(c)(2). Notably, the prosecutor initially bifurcated his direct examination of Ms. Hurtt at the penalty phase into two segments, corresponding to these two distinct matters. First, he orchestrated the testimony to extensively address the sexual assaults upon her in furtherance of the (d)(9) aggravator. *See* N.T., April 18, 2002, at 30-46. Then, overtly "changing gears," the prosecutor addressed the impact of the victims' deaths upon Ms. Hurtt. *Id.* at 47-51. As detailed below, in some relevant respects, but not others, the prosecutor's arguments to the jury were similarly bifurcated.

regard Ms. Hurtt's entire experience with Appellant's abusive course of conduct -- regardless of whether or not that experience was reflected in the convictions offered for the purpose of satisfying the (d)(9) aggravator -- as being relevant to the jurors selection determination. *Accord* N.T., Apr. 18, 2002, at 205 (characterizing Ms. Hurtt as "the only victim at the early stage of that significant history" of violent felony convictions).

Unfortunately, the trial court exacerbated this misperception by instructing the jury as follows:

> Chetia Hurtt, the victim of [the] crimes [underlying the relevant felony convictions], has testified to other allegations, to other offenses allegedly committed by the defendant that have not resulted in separate felony convictions.
>
> I have permitted this testimony for one reason and one reason alone. If you should find beyond a reasonable doubt that the four felonies that I have just listed establish [the (d)(9)] aggravating circumstance, you may then consider Ms. Hurtt's testimony for the sole purpose of deciding how much weight you give to this particular aggravating circumstance.

N.T., Apr. 18, 2002, at 229-230.

It appears that the prosecutor and the trial court may have been relying on the provision of the capital sentencing statute authorizing jurors to consider victim-impact evidence in the selection decision. As the majority explains, that provision directs:

> The court shall instruct the jury that if it finds at least one aggravating circumstance and at least one mitigating circumstance, it shall consider, in weighing the aggravating and mitigating circumstances, any evidence presented about the victim and about the impact of the murder on the victim's family. The court shall also instruct the jury on any other matter that may be just and proper under the circumstances.

*See* 42 Pa.C.S. §9711(c)(2). The difficulty here is that the "victim" referred to in this statutory provision is plainly the murder victim and not victims, such as Ms. Hurtt, of felonies predicate to a Section 9711(d)(9) aggravation determination.[2]

Parenthetically, I have previously expressed a concern about the potential prejudice involved in permitting the Commonwealth to present testimony from victims of felonies predicate to the (d)(9) aggravator at the penalty phase of capital cases. I reiterate those concerns here, as follows:

> Injection of eyewitness testimony relative to an aggravator merely centered on the fact of a conviction also fosters the potential for mini-trials concerning collateral facts. While, again, I recognize that the Commonwealth is to be afforded some latitude to present factual circumstances underlying previous convictions serving as aggravating circumstances, I believe that the development should be subject to judicious control by the trial courts and that the prosecution should be required to employ a less problematic methodology (such as introduction of the guilty plea colloquy).

*Commonwealth v. Smith*, 635 Pa. 38, 57, 131 A.3d 467, 478 (2015) (Saylor, J., dissenting).

Notably, in earlier death-penalty cases, the Court used to stress the non-inflammatory means by which the Commonwealth adduced evidence of the underlying circumstances. *See, e.g., Commonwealth. v. Reid*, 627 Pa. 151, 226, 99 A.3d 470,

---

[2] Perhaps the prosecutor and the trial court were relying on the "just and proper" catchall set forth in Section 9711(c)(2). But, in my judgment, the instruction that a jury may consider non-statutory aggravating factors in its weighing determination relative to a specific aggravating circumstance is materially indistinguishable from denominating the non-statutory factors as a component of the aggravating circumstance in the first instance. And I find it to be impermissible to expand on the prescribed aggravating circumstances in such a fashion, in light of the Court's constitutional obligation to construe the capital sentencing statute narrowly. *See Commonwealth v. Chapman*, 635 Pa. 273, 286, 136 A.3d 126, 133 (2016) (citing *Zant v. Stephens,* 462 U.S. 862, 877, 103 S. Ct. 2733, 2742 (1983)).

515–16 (2014) ("The detectives' testimony in the instant case was brief and straightforward, and simply informed the jury of the events which led to the crimes of which Appellant was convicted."). From my own point of view (albeit recognizing that more recent majority decisions have militated in a different direction), I find the presentation of Ms. Hurtt's extensive testimony about Appellant's perpetration of pervasive sexual crimes against her over an eight-year period to be substantially problematic.

Returning to the claims as presented by Appellant, for the reasons previously stated, I find that his contention that his trial counsel was ineffective for failing to object to the prosecutor's statements has arguable merit. Appellant, however, does not identify what specific aspects of the extensive harm that he inflicted on Ms. Hurtt were outside the realm of his criminal course of conduct from 1993 through 2001 that resulted in his felony convictions for rape and involuntary deviate sexual intercourse. Moreover, the weight of these convictions relative to a continuing course of atrociously abusive conduct on the part of a putative caregiver committed over an eight-year period would seem to eclipse any collateral comments Ms. Hurtt may have made during her testimony. Thus, I conclude that Appellant has failed to demonstrate the essential element of prejudice, which is integral to an ineffectiveness claim.

Additionally, I believe that it is important to separate the finding of a particular aggravator -- here, a significant history of violent felony convictions under Section 9711(d)(9), as well as the weight to be attached to that specific aggravator -- from the role of victim-impact evidence in the jury's selection determination, which is not directly associated with any specific aggravator. *See* 42 Pa.C.S. §9711(c)(2); *accord supra* note 1. Because the prosecutor discussed the impact of Appellant's sexual crimes on Ms. Hurtt both in terms of (d)(9) aggravation (eligibility) and in terms of the weighing

function (or selection), I find it significant to clarify that Ms. Hurtt's "pain" to which the prosecutor was referring in the relevant passage of his argument, was specifically connected to the loss of her brother, whose picture (Commonwealth Exhibit 81) the prosecutor expressly referred to in the relevant questioning. *See* N.T., Apr. 18, 2002, at 207; *see also id.* at 66-67. For this reason, I agree with the majority that these particular comments went to the aspects of Ms. Hurtt's testimony concerning the impact of the death of a murder victim upon her as a family member and were thus proper under Section 9711(c)(2). *See* Majority Opinion, *slip op.* at 32-33.

Finally, in resolving the final two issues in Parts II(D) and (E), to the extent that the majority relies on the axiom that the facts and data underlying an expert's opinion need not be admitted into evidence, *see* Pa.R.E. 703,[3] I note that there is a difference between an expert witness's recourse to facts and data relied on in the relevant field in the abstract (for example, scientific studies supporting a physician's conclusion about general causation) and an expert's treatment of case-specific, material factual circumstances relevant to the particular assessment at hand. *See, e.g.*, *Harley-Davidson Motor Co. v. Springettsbury Twp.*, 633 Pa. 139, 165–66, 124 A.3d 270, 286 (2015) (explaining that "[a]n expert cannot base his [or her] opinion upon facts which are not warranted by the record" (quoting *Collins v. Hand*, 431 Pa. 378, 390, 246 A.2d 398,

---

[3] The majority frames the applicable rule as prescribing that "the facts and data underlying an expert's opinion are admissible to explain how the expert reached his conclusion." Majority Opinion, *slip op.* at 38. The difficulty here, however, is that one of Appellant's complaints is that underlying "facts and data" (*i.e.*, evidence of his juvenile arrest) simply were not admitted into evidence. Moreover, relative to case-specific circumstances impacting an expert's opinion, I do not believe that courts should allow the expert testimony to be employed as a conduit to put otherwise inadmissible evidence before a jury. *See infra*. In this regard, it also does not seem to me to make a difference to me whether the facts alluded to by the expert are gleaned from the report of another. *See* Majority Opinion, *slip op.* at 37-38.

404 (1968) (interlineations in original))); *see also City of Phila. v. WCAB (Kriebel)*, 612 Pa. 6, 21, 29 A.3d 762, 771 (2011).  In this respect, in many scenarios, absent salient facts entered into the record, the expert's opinion based on non-record facts would be lacking in relevance.

I also have difficulty with experts specifically opining about the veracity of a defendant's assertions (albeit that certainly some diagnostic opinions rendered by mental-health professionals will legitimately, implicitly touch on truthfulness).  *See* Majority Opinion, *slip op.* at 34-36.

Accordingly, I would also resolve these claims under the prejudice prong of the ineffectiveness inquiry.